## Commonwealth v. Biddle & Henry.

*Taxation—Capital stock tax—Limited partnerships—Construction of statutes—Sections 20 and 21, Act of June 1, 1889.*

1. A partnership organized under the Uniform Limited Partnership Act of April 12, 1917, P. L. 55, is not subject to taxation on capital stock under the Act of June 1, 1889, P. L. 420, and its amendments.

2. Sections 20 and 21 of the Act of June 1, 1889, P. L. 420, and their amendments, under which certain taxes are imposed upon the personal property of "corporations, limited partnerships and joint stock associations," are not clear and unambiguous as to what was meant by "limited partnerships."

3. "Limited partnerships," formed under the Uniform Limited Partnership Act of April 12, 1917, P. L. 55, are formed by executing a certificate and having the same recorded. There is no provision in law for a president, vice-president, secretary or treasurer of such a partnership. There is no provision making the partnership a legal entity.

4. "Partnership associations" formed under the Act of June 2, 1874, P. L. 271, are quite different. They have officers. Liability is limited to the capital, and the owners are not otherwise liable. Such partnership associations have a legal entity and sue and are sued in the association name.

5. "Limited partnerships" provided for by the Act of May 9, 1899, P. L. 261, must record their articles of incorporation, and must file them with the Secretary of the Commonwealth, and must also publish certain required information in a newspaper. These partnerships have many of the characteristics of corporations, *inter alia*, officers and capacity to be sued and to sue in the partnership name.

6. The sections of the Act of 1889, above referred to, with their various supplements and amendments, require certain reports to be made by the officers of "corporations, limited partnerships and joint stock associations," and they also prohibit the dissolution by the courts of any taxable partnership until all taxes due the Commonwealth are paid.

7. The evident intent of the legislature in the taxing acts referred to was to tax such limited partnerships as have the characteristics of corporations, and not those limited partnerships which are organized under the Uniform Limited Partnership Act of 1917. Partnerships of the latter class neither have officers, such as are required to make the reports referred to, nor are they dependent upon the order or decree of any court for their dissolution.

Appeal from settlement of capital stock tax. C. P. Dauphin Co., Commonwealth Docket, 1921, No. 31.

*Olmsted, Snyder & Miller* and *Francis B. Biddle*, for appeal.

*George E. Alter*, Attorney-General, and *George Ross Hull*, Deputy Attorney-General, for Commonwealth, contra.

HARGEST, P. J., Feb. 26, 1923.—This is an appeal from the settlement of a tax on capital stock, amounting to $648.48, made by the Auditor General and approved by the State Treasurer March 22, 1921. A stipulation was filed to dispense with a trial by jury, pursuant to the Act of April 22, 1874, P. L. 109.

The question involved is whether a limited partnership formed under the provisions of the Uniform Limited Partnership Act of April 12, 1917, P. L. 55, is liable to a tax on capital stock.

The facts, some of which have been agreed upon, we find as follows:

1. Biddle & Henry is a partnership formed April 1, 1920, under the provisions of the Uniform Limited Partnership Act of April 12, 1917, P. L. 55, with its principal office and place of business at No. 104 South Fifth Street, Philadelphia.

2. The partnership consists of five persons, one of whom has a limited liability, and four of whom have a general liability, for the obligations of the partnership.

3. The partnership conducts the business of the purchase and sale of bonds, stocks, notes, certificates and other capital obligations, listed or otherwise, for the account of the firm, and also in the capacity of agent and broker.

4. The articles of copartnership provide that the losses of the limited partner shall be limited to the amount of capital subscribed by him and all net profits, and, except as to the limited partner, the losses shall be shared in the percentage set out in the said articles; that all matters and transactions relating to the joint business of the partnership, except as otherwise expressly provided, shall be governed by the opinion of the majority of the general partners.

5. The partnership has no president, vice-president, secretary or treasurer.

6. The interests of the individual partners in the capital or property of the partnership are not evidenced by certificates of stock, but are fixed and determined by the provisions of articles of copartnership.

## *Discussion.*

The capital stock tax is imposed upon all companies required to report to the Auditor General by section 20 of the Act of June 1, 1889, P. L. 420, which section has been amended by section 4 of the Act of June 8, 1891, P. L. 229; section 1 of the Act of June 2, 1915, P. L. 730, and section 1 of the Act of July 15, 1919, P. L. 948.

As last amended, it is provided: "That hereafter . . . it shall be the duty of the president, vice-president, secretary or treasurer of every corporation having capital stock, every joint stock association, limited partnership, and every company whatsoever, now or hereafter organized or incorporated by or under any laws of this Commonwealth, . . . to make annually, on or before the last day of February, for the calendar year next preceding, a report in writing to the Auditor General, on a form or forms to be prescribed and furnished by him, stating specifically: (then follows the form of the report). . . . The affidavit of any two of the following named officers of such corporation, limited partnership, joint stock association or company, namely, the president, vice-president, secretary or treasurer, shall be attached to said report."

In a number of other places the section contains the language: "Any corporation, company, joint stock association or limited partnership;" and there is a provision for a penalty "if the said officers of any such corporation, company, joint stock association or limited partnership shall neglect or refuse to furnish the Auditor General . . . with the report, as aforesaid."

Section 21 of the Act of June 1, 1889, P. L. 420, was amended by section 5 of the Act of June 8, 1891, P. L. 229; section 1 of the Act of June 8, 1893, P. L. 353; section 1 of the Act of June 7, 1907, P. L. 430; section 1 of the Act of June 7, 1911, P. L. 673; section 1 of the Act of July 22, 1913, P. L. 903. As last amended, this section provides: "That every corporation, joint stock association, limited partnership, and company whatsoever, from which a report is required under the 20th section hereof, shall be subject to and pay into the treasury of the Commonwealth annually a tax at the rate of 5 mills upon each dollar of the actual value of its capital stock of all kinds, including common, special and preferred, as ascertained in the manner prescribed in said 20th section; and it shall be the duty of the treasurer and other officers having charge of any such corporation, joint stock association or limited partnership upon which a tax is imposed by this section to transmit the amount of said tax to the treasury of the Commonwealth within thirty days from the date of the settlement of the account by the Auditor General and

2 D. & C.

State Treasurer: Provided, that for the purposes of this act, interest in limited partnerships or joint stock associations shall be deemed to be capital stock and taxable accordingly."

The words "corporations, limited partnerships and joint stock associations" are used throughout the section.

The question, therefore, is whether the words "limited partnership," used in these sections imposing a tax on capital stock, include the limited partnerships organized under the provisions of the Act of April 12, 1917, P. L. 55.

In Haddock v. Com., 103 Pa. 243, 249, it is said: "The first and cardinal rule for the construction of statutes is, that when the intent of the legislature is plainly expressed, it must prevail; that when the language of the statute is clear and unequivocal, without ambiguity or uncertainty, we are to presume that it expresses the intent of the legislature and no construction is necessary."

In Pittsburgh v. Kalchthaler, 114 Pa. 547, 552, Mr. Justice Green used this language: "We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law-making power. It is a practice to be avoided and not followed."

So, if the words "limited partnership" in the taxing act are plain and unequivocal, our duty is plain, and it would follow that whatever is a limited partnership is taxable.

But an act of the legislature is to be interpreted according to the ordinary meaning of its words and in accord with all of its provisions: Dame's Appeal, 62 Pa. 417. When the whole act is considered, it is at once apparent that the report to be made must have an affidavit of two of the following officers of "such corporation, limited partnership, joint stock association or company, namely, the president, vice-president, secretary or treasurer." The taxing act, therefore, becomes less certain in its terms. Do they apply to all limited partnerships, or to only such as have officers who can make the prescribed reports? It is no less a cardinal principle of construction that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers:" Holy Trinity Church v. United States, 143 U. S. 457, 459. It is also settled that "a tax law cannot be extended by construction to things not named or described as the subject of taxation:" Boyd v. Hood, 57 Pa. 98.

"The power to impose a tax is given by statute, and an act relating thereto embraces such subjects only as are plainly within its terms. To entitle the Commonwealth to the tax imposed, the words of the statute must be clear and unambiguous:" Com. v. Pennsylvania Water and Power Co., 271 Pa. 456; Com. v. Harrisburg Light and Power Co., 262 Pa. 238; Com. v. Brush Electric Light Co., 204 Pa. 249.

The kind of limited partnerships to be organized under the Act of 1917 are those which were theretofore organized under the Act of March 21, 1836, P. L. 143, and its supplements. The taxing statute of June 7, 1879, P. L. 112, provided, in section 6, that "limited partnerships that now are or may hereafter be organized under or pursuant to the laws of this State . . . shall pay into the treasury of the Commonwealth annually a tax on the capital stock of such limited partnerships," and that "for the purposes of this act, interests

in limited partnerships shall be deemed to be capital stock." From the date of the passage of that act until 1920, when the opinion of Deputy Attorney-General Hunter was given to the Auditor General (6 Departmental Reports, 2004), it appears that there was no attempt to tax limited partnerships organized under the Act of 1836.

In 1896 Attorney-General McCormick held that a limited or special partnership organized under the Act of 1836 was not subject to taxation under the Revenue Acts of June 1, 1889, P. L. 420, and June 8, 1891, P. L. 229. In a carefully reasoned opinion his conclusion was that the reports required to be made to the Auditor General by the taxing acts referred to were from corporations and limited partnerships having an organization with such officers as president, chairman, secretary and treasurer. So that it can hardly be contended that the words "limited partnership" in the taxing acts, which have been carried along since 1879, are clear and unambiguous. This leads to the inquiry as to what kind of limited partnerships may be included in that term if those formed under the Acts of 1836 and 1917 are to be excluded. The Limited Partnership Act of 1917 provides for the organization of a limited partnership, consisting of two or more persons, having one or more general partners and one or more limited partners. It is formed by executing a certificate and having the same recorded. The limited partner is not liable to creditors as the general partners are. A limited partnership organized under the Act of 1836 may become a limited partnership under this act. The Act of 1836, its supplements of April 16, 1838, P. L. 691, April 21, 1858, P. L. 383, March 30, 1865, P. L. 46, Feb. 21, 1868, P. L. 42, are all repealed by the Uniform Limited Partnership Act of 1917. Under the Act of 1836 and its supplements, and the Act of 1917, there is no provision for a president, vice-president, secretary or treasurer in the organization. There is no provision making the partnership a legal entity or allowing it to be sued in the partnership name without joining the partners, although there was in the supplement of March 30, 1865, P. L. 46, a provision that the "business of the partnership shall be conducted under a firm in which all the names of all the general partners shall be inserted, except that when there are more than two general partners, the firm name may consist of either two of such partners, with the addition of the words 'and company.'" But, in that event, the firm was required to place outside of its place of business some sign containing in "legible English characters all the names in full of all the members of said partnership, stating who are general and who are special partners."

Quite different are the "partnership associations" provided for under the Act of June 2, 1874, P. L. 271. In these associations the capital alone is liable to all the debts of the association and the owners are not otherwise liable. The word "limited" is required to be the last word in the name of every such partnership association. The association is conducted by "not less than three nor more than five managers of said association, one of whom shall be the chairman, one the treasurer and one the secretary, or one may be both treasurer and secretary." The association from time to time divides its profits in the form of dividends. The Act of May 10, 1889, P. L. 183, amends the "Partnership Association Act" of 1874, and provides for the fixing of the salaries of "the president and treasurer." By the Act of May 1, 1876, P. L. 89, such partnership association formed under the Act of 1874 may hold real estate in its own name and sue and be sued in its own association name, and when suit is brought, service is to be made upon the chairman, secretary or treasurer, which service shall be as complete and effective as if made upon each and every member of the association. By the further supplement of June 10, 1881,

2 D. & C.

Commonwealth v. Biddle & Henry.

P. L. 115, such partnership association may be served with legal processes in any county where the association may keep an office "by serving such process upon any agent, chief or any other clerk or upon any director or manager." By the amendment of May 10, 1889, P. L. 183, the board of managers is authorized to fix the salaries of the "president, secretary and treasurer." By the supplement of June 8, 1895, P. L. 186, a method of renewing such partnership associations is provided by the publication of the prescribed notices and a vote by ballot of the members. It is also provided that such partnership associations may adopt by-laws for their regulation and fixing the number of managers who are to be chosen by ballot. The Act of 1874 and its supplements and amendments were not affected or repealed by the Uniform Limited Partnership Act, but are amended by an Act of April 12, 1917, P. L. 67, to make them consistent with the Uniform Limited Partnership Act.

In Com. v. Sanderson & Robb Imp. Co., 3 Dauphin Co. Reps. 116, Judge Henderson held that a company created under the Act of 1874 and its supplements of Feb. 18, 1875, P. L. 3, and May 1, 1876, P. L. 89, was liable to a tax on capital stock under the Act of June 7, 1879, P. L. 112. In that case the company defendant had capital stock of $300,000 represented by 300 shares of $1000 each, and it distributed certain dividends to its stockholders. It was held that the language of the Act of 1879 included companies formed under this act.

Judge Simonton, in the case of Com. v. Sandy Lick Gas, Coal and Coke Co., 1 Dauphin Co. Reps. 314, held that the partnership associations under the Act of 1874 were liable to a tax on capital stock under the Act of June 7, 1879.

In Patterson v. Tidewater Pipe Co., Ltd., 12 W. N. C. 452, the similarity between partnership associations and corporations is pointed out, and it is there held that they have many of the characteristics of corporations and are quasi-corporations: Com. v. Sandy Lick Gas, Coal and Coke Co., 1 Dauphin Co. Reps. 314; Oak Ridge Coal Co., Ltd., v. Rogers, 108 Pa. 147, 150.

In associations formed under the Act of 1874 "the business is entrusted wholly to managers and not to each member, and each member is not the implied agent of the other in the conduct of the business, as in ordinary partnerships:" Patterson v. Tidewater Pipe Co., Ltd., 12 W. N. C. 452; Com. v. Sandy Lick Gas, Coal and Coke Co., 1 Dauphin Co. Reps. 314.

There is still another kind of so-called limited partnerships provided for by the Act of May 9, 1899, P. L. 261, in which the liability of one or more or all of the partners may be limited to the capital subscribed by such partners. Under this act, a copy of the articles of copartnership, showing the amount of capital and the liability to which each partner is limited, must, in addition to being recorded, be filed in the office of the Secretary of the Commonwealth. Notice of the formation of such partnership must be published in a newspaper once a week for three weeks, stating the amount of capital subscribed by each partner, when and how the amount of subscription is to be paid, and the fact that the liability of one or more or all of the partners is limited. This act provides, in section 4, that "official positions for the transaction of the business of the partnership may be constituted by such by-laws, rules and regulations, and the powers and duties of the respective officers prescribed therein." This kind of a partnership may use a common seal. At the close of each calendar year the book value of the several interests must be fixed. It must keep posted in its principal office a written or printed list of partners, with the amount of capital subscribed by each, and the words "limited liability" must appear after the name of each partner whose liability is limited, and

the same must appear on the bill-heads or letter-heads, if the names of the partners are stated. In this character of partnership, a transfer of interest does not dissolve the partnership unless the articles so prescribe. The partnership may hold, mortgage, encumber, lease or convey real estate or interests therein in the firm name, and may sue and be sued in the partnership name, and not by or in the individual names of the partners. Partnerships under this act also have many of the characteristics of corporations.

The Act of 1899 was amended by the Act of April 12, 1917, P. L. 67, so as to make it thereafter to apply to a partnership in which the liability of all the partners is limited, and not to apply to the situation covered by the Uniform Limited Partnership Act, where the liability of one or more, but not all, of the partners is limited.

Attorney-General Carson, in an opinion dated Oct. 30, 1903 (13 Dist. R. 76), held that a partnership organized under the provisions of the Act of 1899 was a limited partnership, liable to taxation on capital stock.

There has been a considerable confusion of terms with reference to these various kinds of partnerships, and in many instances the words "limited partnership" are used for a partnership association created under the Acts of 1874 and 1899. For instance, the marginal note to the Act of June 10, 1881, P. L. 115, is "service of process on limited partnership," which refers exclusively to a partnership association. In Com. *v.* Sanderson & Robb Imp. Co., Ltd., 3 Dauphin Co. Reps. 116, two paragraphs of the syllabus refer to that company, which is organized under the Act of 1874, as "a limited partnership," and likewise the syllabus in the case of Com. *v.* Sandy Lick Gas, Coal and Coke Co., 1 Dauphin Co. Reps. 314, calls that company, also organized under the Act of 1874, a limited partnership.

In Com. *v.* C. H. Coffroth & Co., Ltd., 16 Dauphin Co. Reps. 76, the syllabus refers to that defendant, which is a partnership association organized under the Act of 1874, as a limited partnership. Of this confusion it is said in Patterson *v.* Tidewater Pipe Co., 12 W. N. C. 452, 454, referring to a partnership association organized under the Act of 1874: "Institutions of this kind are called limited partnerships in common parlance, but it is clear to my mind that they are not so in any proper sense, nor in any of the senses in which such a phrase has been wont to be used in Pennsylvania legislative and judicial nomenclature. The organization so to be formed are nowhere called limited partnerships in the acts of assembly; they are called partnership associations in which the capital subscribed shall alone be responsible for the debts of the association."

In Com. *v.* Dilworth, Porter & Co., Ltd., 242 Pa. 194, 197, although the defendant was correctly characterized by Judge McCarrell as a "limited partnership association," Mr. Justice Elkin said: "The defendant company is a limited partnership," and both in the catch words and the syllabus it is referred to as a "limited partnership." So, in view of this confusion of terms, is it not likely that the legislature used the name "limited partnership," as the courts and the reporters had used it, to refer to partnership associations? It can hardly be contended that the partnership under the Act of 1836 and the Uniform Limited Partnership Act of 1917 is a "company" within the meaning of the taxing acts. The Act of July 15, 1919, P. L. 948, which is the last amendment of section 20 of the Act of 1889, and which contains the same language carried along from the other acts, provides that "it shall be the duty of the president, vice-president, secretary or treasurer of every corporation having capital stock, every joint stock association, limited partnership and every company whatsoever" to make reports, so that the character

2 D. & C.

of company included is a company which has officers of the kind designated. So, also, it may be said that the "limited partnership" referred to is the kind that has such officers. A limited partnership under the Act of 1917 has no such officers. A partnership association under the Act of 1874, and the kind of partnership organized under the Act of 1899, may have them, because the law provides for them. The Limited Partnership Act describes the thing to be formed under that act as a "limited partnership" and not as a "company." It has no legal entity, such as a corporation or joint stock association. The Commonwealth has not invested it with privileges or franchises. It has simply regulated its organization. A limited partnership under the Act of 1917 may dissolve itself, and section 20 of the act provides that the retirement, death or insanity of a general partner dissolves it, unless the right is reserved in the certificate to the general partners to continue the business. Section 32 of the Act of 1889 provides that "no corporation, company, joint stock association or limited partnership made taxable by this act shall hereafter be dissolved by the decree of any Court of Common Pleas . . . until all taxes due the Commonwealth have been fully paid into the State Treasury," etc. This is certainly inconsistent with a limited partnership formed under the Uniform Act of 1917, which does not require the dissolution by the Court of Common Pleas. A limited partnership under the Act of 1917 not being a legal entity, a settlement against it would have to take the anomalous form of a settlement against all the partners individually and not against the partnership alone, as in the case of partnership associations which can sue and be sued in the association name.

Furthermore, when we examine the Bonus Act of May 8, 1901, P. L. 149, we find that it specifically provides for a bonus "on partnership associations" formed under the Act of June 2, 1874, P. L. 271, and "every partnership" formed under the Act of May 9, 1899, P. L. 261. It does not subject limited partnerships formed under the Act of 1836, and now under the Limited Partnership Act of 1917, to the payment of any bonus.

It would seem a rather anomalous position for the legislature to provide that a partnership, no matter how large or how many general partners it may have, if it had one special or limited partner with an interest ever so small, should be subject to taxation, and that the general partners would be required to pay the tax on the capital stock. We think that there is no such legislative intention to be gathered merely from the use of the words "limited partnership" in the taxing acts, but that those words are the result of a confusion of terms due to the language of both the courts and the reporters of opinions. We are of opinion that the legislature intended to tax those partnership associations and partnerships which have the characteristics of a corporation and which have the officers and the organization to make the reports required in order to subject them to taxation. We are not unmindful, in coming to this conclusion, that Deputy Attorney-General Hunter, in his opinion above referred to, holding that limited partnerships under the Uniform Limited Partnership Act of 1917 are taxable, suggested that there was nothing in that act of assembly to prohibit them from creating officers so that the required reports might be made. The answer to that suggestion is that the authority to tax must be found in the plain letter of the law and not in the absence of restrictions.

*Conclusion.*

For these reasons, we conclude that there is no legislative intention to subject limited partnerships organized under the Limited Partnership Act of 1917 to taxation on capital stock.

Now, Feb. 26, 1923, judgment is hereby directed to be entered in favor of the defendant and against the Commonwealth, unless exceptions be filed within the time limited by law.

From William Jenkins Wilcox, Harrisburg, Pa.