Valley Smokeless Coal Co., Appellant, *v.* Hager.

*Mines and mining—Illegal mining—Remedy—Acts of May 8, 1876, P. L. 142, and March 26, 1806, 4 Sm. L. 326—Damages—Treble damages—"Additional remedies"—Words and phrases.*

1. Recovery of damages for coal, iron or other minerals, which a defendant has knowingly and tortiously mined or dug out of

the lands of a plaintiff, without his consent, must be had under and in accordance with the provisions of the Act of May 8, 1876, P. L. 142.

2. In such cases, section 13 of the Act of March 26, 1806, 4 Sm. L. 326, controls, and the proceedings cannot be based solely on the provisions of the common law.

3. The standard for measuring the damages in cases where such evidence is available, is the value of the coal, iron or other minerals in place, and the amount of recovery must be limited to double the value, unless defendant has converted the mineral to his own use, in which event it will be treble that value.

4. The phrase "additional remedies," in the title of the Act of May 8, 1876, P. L. 142, means additional liabilities, and refers to the double and treble damages specified in the body of the statute.

Argued February 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 43, March T., 1928, by plaintiff, from order of C. P. Cambria Co., Dec. T., 1924, No. 439, refusing to take off nonsuit, in case of Valley Smokeless Coal Co. v. Harry V. L. Hager, trading as Colonial Coal Co. Affirmed.

Assumpsit for money had and received. Before REED, P. J., O. C., specially presiding.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned,* inter alia, was order, quoting record.

*Charles J. Biddle,* with him *Charles S. Evans* and *Dickson, Beitler & McCouch,* for appellant.—Where an adjoining owner deliberately and wilfully crosses the dividing line and mines and sells coal from his neighbor's mine, the injured party may maintain an action of assumpsit for money had and received and recover damages on the basis of the amount received by defendant, or which he should have received, from the sale of

plaintiff's coal: McCullough v. McCullough, 14 Pa. 295; Satterlee v. Melick, 76 Pa. 62; Snyder v. Vaux, 2 Rawl, 423; Herdic v. Young, 55 Pa. 176.

Plaintiff had the right to waive the tort and sue in assumpsit for money had and received: Michener v. Dale, 23 Pa. 59; Pryor v. Morgan, 170 Pa. 568; Bethlehem Boro. v. Fire Co., 81 Pa. 445; Rees & Sons Co. v. Exposition Society, 44 Pa. Superior Ct. 381; Dundas v. Muhlenberg, 35 Pa. 351.

*Philip N. Shettig,* for appellee.—An action of assumpsit may not be maintained for money had and received, in a case in which conflicting titles to land, or the right of inheritance, come into question; that this was such case, the state of the pleadings amply proves: Mather v. Trinity Church, 3 S. & R. 509; Baker v. Howell, 6 S. & R. 476; Brown v. Caldwell, 10 S. & R. 114; Powell v. Smith, 2 Watts. 126; Wright v. Guier, 9 Watts. 172; Lewis v. Robinson, 10 Watts. 338; Elliott v. Powell, 10 Watts. 453; Renick v. Boyd, 99 Pa. 555; National Transit Co. v. Weston, 121 Pa. 485; Giffin v. Pipe Lines, 172 Pa. 580; Crawford v. Oil Co., 208 Pa. 5; Reilly v. Petroleum Co., 213 Pa. 595; Brandmeier v. Coal Co., 229 Pa. 280.

The uniform standard of measure of damages for trespass on real estate caused by mining and taking away minerals therefrom, as held by the courts of Pennsylvania, is the value of the mineral in place before severance: Blair I. & C. Co. v. Lloyd, 1 Walker 158; Forsyth v. Wells, 41 Pa. 291; Coleman's App., 62 Pa. 252; Ege v. Kille, 84 Pa. 333; Stauffer v. Soap Co., 151 Pa. 330; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Lehigh Coal Co. v. R. R., 187 Pa. 145; Kingston Trustees v. Coal Co., 241 Pa. 469.

Opinion by Mr. Justice Simpson, March 12, 1928:

Plaintiff appeals from the refusal of the court below to set aside a judgment of nonsuit, in an action wherein

the statement of claim averred, and the testimony tended to prove, that defendant "by his agents or servants, acting under his instructions and with his knowledge and consent,......[took a specified quantity of coal] from the lands of plaintiff, and thereupon sold the same and *converted* the proceeds to his own use. Said entry, mining, removal, sale and *conversion* were made by defendant wilfully, intentionally, without the consent of plaintiff, and with knowledge that the coal removed was the property of plaintiff,......that said taking of said coal was unlawful and tortious......said coal when sold was the property of plaintiff and [it]......is entitled to the proceeds received by defendant from the sale thereof." The statement says nothing about waiving the tort and suing in assumpsit; and while there are minor averments in it, which would not be inappropriate in such an action, taken in its entirety the claim, as declared upon, is one in what was formerly known as trover and conversion, now included in the action of trespass. Under such circumstances, the case would be governed by the Act of May 8, 1876, P. L. 142, and plaintiff could recover only upon proof of the value of the coal in place (Oak Ridge Coal Co., Limited, v. Rogers, 108 Pa. 147; Trustees of Kingston v. Lehigh Valley Coal Co., 241 Pa. 469, 477; Matthews v. Rush, 262 Pa. 524, 527), and of this it refused to offer available evidence, though specifically given an opportunity to do so. The failure to prove this fact is the basis of the judgment below. Plaintiff gives as the reason for its refusal, that such evidence was unnecessary, since the cause of action was intended to be in assumpsit, and it was always so treated by the court and by counsel on both sides. The record bears out the latter contention, and hence it must be likewise so considered by us; for, if objection had been made that the statement averred only an unwaived tort, it could have been amended as of right.

We are thus brought directly to the point relied on by plaintiff and skilfully argued by its counsel, namely, that it had the right to waive the tort arising from the wrongful taking and conversion (though it had not averred such waiver), and proceed in assumpsit for money had and received to its use; and, since it alleges that the coal was intentionally and tortiously taken, it was entitled to recover, as at common law, the amount defendant received for it, without any allowance for the labor and money expended to bring it to the condition in which it was when sold, although otherwise this would not have been so. Plaintiff's contention amounts to this, therefore: as it waived a tortious taking, and then based its right on that tortious taking, it may, by thus affirming and disaffirming in the same sentence, recover, because of the tortious taking, an amount which it says is ten times as great as it would have been entitled to in the case of an unwaived tortious taking. Without stopping to consider whether or not the common law would have sustained such an anomaly, it suffices that, under the circumstances here appearing, the law of this State does not permit it.

The Act of 1876, supra, provides that "if any person or corporation shall mine or dig out any coal, iron or other minerals, knowing the same to be upon the lands of another person or corporation, without the consent of the owner......[he shall be guilty of a misdemeanor, punishable by fine and imprisonment] and the person or corporation so offending shall be further liable to pay to such owner double the value of the said coal, iron or other mineral so mined, dug out or removed, or in case of the conversion of the same to the use of such offender or offenders, treble the value thereof, to be recovered with costs of suit by action of trespass or trover, as the case may be, and no prosecution by indictment under this act shall be a bar to such action." It will be noticed that this statute in terms gives a remedy where, as here, coal has been knowingly and

tortiously mined and taken from the property of another, and specifies that recovery is to be had by an "action of trespass or trover as the case may be." Under such circumstances, section 13 of the Act of March 21, 1806, 4 Sm. L. 326, 332, says the remedy thus provided shall be exclusive. This latter statute declares that "in all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of Assembly of this Commonwealth, the directions of such acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect." It follows that plaintiff's attempt in this case to obtain a remedy "agreeably to the provisions of the common law" must necessarily fail, since the Act of 1806 limits the remedy to that specified in the Act of 1876: Moyer v. Kirby, 14 S. & R. 162, 164; Chestnut Hill Turnpike Co. v. Martin, 12 Pa. 361, 362; Borough of Beltzhoover v. Gollings, 101 Pa. 293, 295; Deer v. Sheraden Borough, 220 Pa. 307, 310.

Without referring to the Act of 1806, but apparently recognizing the weakness of its position, plaintiff further contends that the Act of 1876 was not meant to do away with the right to waive the tort and sue in assumpsit relying on the tort, because its title is "An act to provide *additional remedies* for the unlawful mining of coal, iron and other minerals in this Commonwealth." The phrase "additional remedies," which alone bears the stress of the argument, is not found in the body of the statute, and is, moreover, an inappropriate expression, if it is to be given the signification suggested by plaintiff. Normally, a remedy is a method or means for effecting a cure; which, if applied to the Act of 1876, would indicate the actions of trespass and trover, both of which had existed for centuries before that statute was passed, and hence could not be "additional remedies." If, however, the phrase means "additional

liabilities," as the imposition of double and treble damages shows that it does, then plaintiff's argument on this point wholly fails, and the expression furnishes another reason for applying the Act of 1806; for the legislature, though presumably knowing of our earlier decisions holding that recovery could be had only for the value of the mineral in place, where such evidence was available, made no attempt to change this as the standard, but only to double or treble that value, in order to provide "additional remedies" for the wrong.

Plaintiff also argumentatively inquires whether the effect of sustaining the judgment of the court below, as we now do, would not be to strike down, under the circumstances specified in the Act of 1876, the right of an owner to specifically recover, by an action of replevin, his coal, iron or other mineral from a wrongdoer who still had possession of it. This appeal neither raises nor suggests such a question, and we do not care to indulge in obiter dictum. What we decide is, that where any such mineral is tortiously and knowingly mined or dug from the lands of another, without his consent, damages can be recovered only under the Act of 1876, supra, and the value of the coal in place is the standard, where, as here, such evidence is available.

To avoid misapprehension, perhaps we should add we have not overlooked Huges v. Stevens, 36 Pa. 320; Dunbar Furnace Co. v. Fairchild, 121 Pa. 563, or Same v. Same, 128 Pa. 485, in which we held that, in order to recover treble damages under the Act of March 29, 1824, P. L. 152, relating to the cutting down of trees on the lands of another without his consent, the owner must aver the wrong was done contra formam statuti, and in which we said, by way of dictum only: "The statutory action is cumulative to the common law remedy, or perhaps rather an optional or alternative remedy, for a resort to either would be a bar to the other." In each of those cases, however, the action was in trespass, which was one of the forms of action expressly pre-

scribed by the Act of 1824, whereas plaintiff here attempts to recover in assumpsit, which is, impliedly at least, forbidden by the Act of 1876, when construed as required by the Act of 1806, which was not brought to the attention of the court, nor passed upon by it, in either of those cases.

The judgment of the court below is affirmed.